637 P.2d 542

**In the Matter of the Last Will and Testament of W. A. HAMILTON, Deceased.**

**Evelyn AIKENS and Hal Hamilton, Legatees-Appellants,**

v.

**Jack HAMILTON, Executor and Estate of W. A. Hamilton, Appellees.**

No. 13109.

Supreme Court of New Mexico.

Nov. 19, 1981.

Rehearing Denied Dec. 3, 1981.

Eaves & Darling, Jeffrey J. Dempsey, Albuquerque, Mayfield & Beal, Las Cruces, for legatees-appellants.

Charles D. Alsup, Clayton, Charles C. Spann, Albuquerque, for appellees.

## OPINION

RIORDAN, Justice.

On rehearing, the opinion filed October 6, 1981 is withdrawn and the following opinion is substituted.

W. A. Hamilton died on September 18, 1968. He left a will dividing his considerable property among his widow, three children, and grandchildren. The residue of his estate was to be divided equally between his children, Jack, Hal and Evelyn. Jack was nominated in the will to be executor of the estate. The decedent's will was admitted into probate in 1968, however, because of challenges to the will by his widow and disputes among the residuary legatees, the final account and report was not filed until June 1976. Hal and Evelyn filed objections to the final account and report that were heard on October 29, 1979. The objections concerned disbursements made to Jack. After the hearing on the objections, the trial court ruled in favor of the executor and approved the final account and report.

Evelyn Hamilton Aikens and Hal Hamilton (objectors) raise six points in this appeal. We reverse and remand.

We restate the points raised on appeal as follows:

I. Whether the court exercised its independent judgment in adopting, almost verbatim, the findings of fact and conclusions of law submitted by the executor.

II. Whether there was a valid agreement between the executor and objectors that resolved unfiled claims against the estate.

III. Whether the court erred in approving the final account and report that contained disbursements made to the executor for which no claims were filed.

IV. Whether the estate is entitled to be reimbursed for the use of estate property and improper disbursement of funds by the executor.

V. Whether the court erred in approving additional executor's fees, in not removing the executor and in not forfeiting his fees for misconduct.

VI. Whether the court erred in approving attorneys' fees claimed by the executor.

I. *Findings of Fact and Conclusions of Law*

In this case, the executor filed 29 requested findings of fact and 12 requested conclusions of law. The objectors filed 226 requested findings of fact and 20 requested conclusions of law. The trial court stated 30 findings of fact and 12 conclusions of law that were substantially the same as those requested by the executor.

Findings of fact and conclusions of law adopted by the trial court must show the exercise of the court's independent judgment. *Mora v. Martinez*, 80 N.M. 88, 90, 451 P.2d 992, 994 (1969). The court may not rely on counsel to prepare findings that support his judgment. *Pattison Trust v. Bostian*, 90 N.M. 54, 559 P.2d 842 (Ct.App. 1976), *cert. denied*, 90 N.M. 254, 561 P.2d 1347 (1977). This does not mean that the trial court cannot incorporate the findings submitted by counsel in those adopted. *Jesko v. Stauffer Chemical Company*, 89 N.M.

786, 558 P.2d 55 (Ct.App.1976). We recently held that absent an indication of the abdication of judicial responsibility, the adoption of findings of fact and conclusions of law similar to those requested by counsel are proper. *Sisneros v. Garcia*, 94 N.M. 552, 613 P.2d 422 (1980). Even the adoption of verbatim findings is not in error if they are supported by the record. *United Nuclear Corp. v. General Atomic Co.*, 93 N.M. 105, 122, 597 P.2d 290, 307, *cert. denied*, 444 U.S. 911, 100 S.Ct. 222, 62 L.Ed.2d 145 (1979).

■ After reviewing the record in this case, we find that the findings of fact and conclusions of law are sufficient. We cannot say that the trial court abdicated its responsibility by adopting findings of fact and conclusions of law similar to those requested by the appellees.

## II. *Agreement by Heirs*

Objectors argue that the court erred in determining that the heirs entered into an agreement to settle their claims against the estate. Objectors further argue that the executor, who was one of the heirs, violated his fiduciary duty to the other two heirs in obtaining their signatures on the agreement.

The executor had a number of personal unfiled claims against the estate. In consideration for giving up these claims, he had agreements, as to the distribution of the residue of the estate, prepared and signed by the objectors and himself. The executor was to receive $56,000 and the objectors $6,000 each under the agreement.

Hal Hamilton claims that, because of his history of alcoholism, he does not know if he signed the agreement or where or why he signed it. Evelyn Aikens claims that she signed the agreement only because the executor threatened and intimidated her. They both also allege fraud against the executor in obtaining their signatures.

■ The trial court correctly found no fraud by the executor. The transcript shows no evidence of fraud in obtaining the signatures of the other heirs. However, the court erred in finding that the executor did

not exercise undue influence over Hal Hamilton and Evelyn Aikens and that he did not abuse his fiduciary relationship in regard to the objectors.

■ When a transaction between an executor and the beneficiaries under a will is called into question, the executor has the burden of showing that he acted in good faith. *See Woodson v. Raynolds*, 42 N.M. 161, 76 P.2d 34 (1938). Undue influence will be presumed when the fiduciary exercises a strong dominate relationship and thereby obtains benefits for himself against the interest of the beneficiaries. *See Galvan v. Miller*, 79 N.M. 540, 445 P.2d 961 (1968).

The transcript in this case is replete with evidence of the executor's total domination of the objectors in the handling of the estate. He handled it as if it were his own property. In addition, he did not even advise the objectors of the fact that all of the claims that he purportedly had against the estate were barred by Section 31–8–3, N.M. S.A.1953, because they had not been filed in time. Nor could the executor explain how he determined the sum of $56,000 for his unfiled claims or show documentation to support the alleged claims. The executor occupied a strong dominant position in this relationship; therefore, it is proper to presume the existence of undue influence. *Galvan v. Miller*, supra.

After reviewing the entire transcript, we hold that the trial court's finding was contrary to the evidence and cannot be supported. The agreement was obtained by the exercise of undue influence and cannot stand.

## III. *Disbursements to Executor*

The executor made certain disbursements to himself, on the advice of counsel, without filing claims against the estate or obtaining approval by the court. They were:

a) payment of $9,000 for salary allegedly due from the deceased from January to September 1968;

b) reimbursement of $4,000 for a set of scales installed after decedent's death, on the ranch property inherited by the executor; and,

c) reimbursement of $3,207.30 for ranch expenses and "interest" paid by the executor personally on a loan that he had obtained to pay ranch expenses.

Section 31–8–3, N.M.S.A.1953, which controls this case, states:

*All claims* against the estate of deceased persons *not filed * * * within six [6] months* from the date of the first publication of notice of the appointment of the executor * * * * shall be barred * * * * (Emphasis added.)

Executor concedes that he did not file his claim in compliance with the statute, but alleges that objectors cannot attack the final account because the objections filed by objectors were not sufficiently stated to comply with the requirements of Section 31–12–11, N.M.S.A.1953 (Supp.1975).

Any heir at law, devisee, legatee, creditor or other person interested in the estate shall * * * before * * * such hearing and settlement, file his objections thereto, or to any particulars thereof, specifying the particulars of such objections* * * *

■ Neither side included in the transcript for this appeal, the original objections to the final account and report. However, the objections to the final account and report are on file in this Court from two previous appeals. In *Matter of Will of Hamilton*, 91 N.M. 129, 571 P.2d 121 (1977), the trial court, after ruling that the filing of the original objections had been untimely, was reversed in an opinion written by Justice Sosa. In *Matter of Will of Hamilton*, No. 12, 146, Mar. 14, 1979, Justice Federici, by decision, affirmed the trial court's refusal to hear the objector's amended objections. Under New Mexico Appellate Civil Procedure Rule 8(d), N.M.S.A.1978, "[t]he fact that parts of the record are not included in the transcript shall not prevent the parties or the appellate court from relying on such parts." In accordance with Justice Federici's 1979 decision, we considered *only* the original objections to the final account and report and find them to be sufficient under the statute.

■ Since the payments made by the executor to himself were not based upon claims filed, Section 31–8–3, N.M.S.A.1953, nor were they paid pursuant to motion and order of the court, Section 31–8–2, N.M.S.A. 1953, they are improper and cannot be allowed.

### IV. *Reimbursement to Estate*

■ The executor purchased a new 1969 pickup truck, trading in a 1966 pickup truck owned by the estate and paying the balance of $1,703.55 from estate funds. The parties agreed that the executor should have the sum of $1,300.00 deducted from his share of the estate for the value of the 1966 pickup truck. However, the executor has never reimbursed the estate for the remaining $1,703.55 and the court did not require him to do so, even though he later traded the 1969 pickup truck in on a 1972 pickup truck that he received title to in his own name. We hold that the court erred. The executor did not have the permission of the court to expend the assets to purchase the new vehicle. He used the truck for both personal and estate use but kept no records as to its use. The executor alleges that he used the truck to take care of the cattle; however, all the cattle owned by the ranch were sold by December 1968. An executor may not use the property or assets of the estate for his own benefit; if he does so, and if the property is chattel, he may be held liable either for the value of the use or for profits. *2 Bancroft's Probate Practice*, § 343 at 301 (2d ed. 1950). We remand with instructions for the executor to reimburse the estate for $1,703.55 plus the statutory rate of interest[1] or for the trial court to determine the reasonable value of the use of the truck plus the statutory rate of interest. The amount decided will be charged to the executor's share of the estate.

### V. *Removal of the Executor and Additional Fees*

■ The objectors allege that the trial court erred by not removing the executor

---

1. The statutory rate of interest will be six per-

cent (6%). § 50–6–3, N.M.S.A.1953.

for misconduct under Section 31–1–26, N.M. S.A.1953. Certainly, there was sufficient evidence if the court chose to do so. However, the court in its discretion, did not remove the executor. In light of the fact that the executor acted on the advice of counsel and of the accountant who handled all the decedent's financial affairs for a number of years, we assume that the trial court determined that his conduct was not an intentional breach of his duty, but rather a result of poor advice; therefore, his removal was not required. Although we may have done otherwise, we cannot say that the court abused its discretion.

The objectors also contend that the trial court erred in awarding executor's fees of $1,500.00 more than the $9,578.64 allowed by statute. § 31–10–1, N.M.S.A.1953. The trial court found that the executor had spent a substantial amount of his time on the trial and appeal of the lawsuit filed against the estate by the decedent's widow and on the hearing of the final account and report. We recognize that this court has previously approved the payment of executor's fees in excess of the statutory amount, but only in exceptional circumstances. *In re Hildebrand's Estate*, 57 N.M. 778, 264 P.2d 674 (1953). Attending the hearing to defend the final account and report are part of the executor's duties that the statutory fee covers. He may not be awarded additional fees for that time. However, we remand to the trial court for reconsideration on whether the executor is entitled to extra fees for the time spent on the trial and appeal.

VI. *Attorney's Fees*

The executor originally retained an attorney to represent the estate. After he was sued by the widow of the deceased in federal court, he retained an additional attorney. In addition to the suit by the widow of the decedent, the executor was later sued in federal court by Evelyn Aikens personally for alleged tortious conduct. The estate was not a party to that lawsuit. Objectors contend that a great portion of the attorneys' fees incurred were the result of the estate's attorneys defending the allegations that the executor misused his position and improperly disbursed estate funds. These are personal suits between the heirs; the estate is not a party to these suits. *See Smith v. Burt*, 388 Ill. 162, 57 N.E.2d 493 (1944). On remand, we instruct the trial court to review all the attorneys' fees charged to the estate to determine which of those are proper estate expenses and which should be borne by the executor personally.

The decision of the trial court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

IT IS SO ORDERED.

SOSA, Senior Justice, and PAYNE, J., concur.